# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

CHAUNCEY DAVIS, :
:
    Plaintiff, :
:
VS. : Civil Action File No.
: 7 : 09-CV-73 (HL)
CARLTON POWELL, et al., :
:
    Defendants. :

## **RECOMMENDATION**

Presently pending in this *pro se* prisoner action filed under 42 U.S.C. § 1983 is Plaintiff's motion to prosecute the action (Doc. 17) and Defendants' motion for summary judgment. (Doc. 24).

At all times relevant to this lawsuit, Plaintiff was a pretrial detainee at the Thomas County Jail. Defendants Powell, Williams, Haywood, and Richards are all officials at the Jail. Plaintiff alleges that all named Defendants have retaliated against him because he asked for grievances and/or filed grievances. Additionally, Plaintiff alleges that he is HIV positive; that Sgt. Haywood refused to give him the correct medication for his condition; that his medication has been inappropriately prescribed twice since his incarceration and was not corrected upon notification; and that all named Defendants refuse him medical care, treatment, and medication as a form of retaliation.[1] (Docs. 2 and 10).

## *Plaintiff's Motion to Prosecute (Doc. 17)*

Plaintiff in this motion appears to be asking for summary judgment in this case. This motion is not in the form required by the Federal Rules of Civil Procedure or the local rules of this district,

---

[1] Plaintiff made other allegations against these officials in his complaint; however, the other allegations were dismissed in Doc. 38.

and was filed prior to the filing of any answer by Defendants. It is therefore the RECOMMENDATION of the undersigned that this motion be **DENIED**; however, the undersigned has considered the arguments made in the motion in the consideration of Defendants' motion for summary judgment below.

*Defendants' Motion for Summary Judgment (Doc. 24)*

Defendants now move for summary judgment on the merits of the allegations, asserting the defenses of qualified immunity and *respondeat superior*[2]. In determining a summary judgment motion, the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Welch v. Celotex Corp.*, 951 F.2d 1235 (11th Cir. 1992)(citing *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)). However, once the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

When the nonmoving party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the nonmoving party's claim, or by pointing to specific portions of the record which demonstrate that the nonmoving party cannot meet its burden of proof at trial. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 606-608 (11th Cir. 1991).

---

[2]Defendants also move for summary judgment based upon Eleventh Amendment immunity, and move to dismiss the complaint based upon Plaintiff's failure to exhaust administrative remedies. However, in light of the recommendation to grant summary judgment to Defendants on other grounds, the undersigned is not addressing Defendants' argument regarding Eleventh Amendment immunity or dismissal for failure to exhaust.

The existence of material disputed facts will not defeat summary judgment in favor of a public official, however, when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [plaintiff's] case, and on which [plaintiff] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23, 106 S.Ct. at 2552. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-250, 106 S.Ct. 2505 (internal citations omitted). It is not the court's function at the summary judgment stage to determine credibility or decide the truth of the matter. *Id.* at 249, 106 S.Ct. 2505. Rather, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Id.* at 255, 106 S.Ct. 2505.

Furthermore, "[a] nonmoving party, opposing a motion for summary judgment supported by affidavits[,] cannot meet the burden of coming forth with relevant competent evidence by simply relying on legal conclusions or evidence which would be inadmissible at trial." *Avirgan v. Hull,* 932 F.2d 1572, 1577 (11th Cir.1991) (citation omitted), *cert. denied,* 506 U.S. 952, 113 S.Ct. 405, 121 L.Ed.2d 330 (1992). The evidence "cannot consist of conclusory allegations or legal conclusions."

3

*Id.* (citation omitted). Unsupported self-serving statements by the party opposing summary judgment are insufficient to avoid summary judgment. *See Midwestern Waffles, Inc. v. Waffle House, Inc.,* 734 F.2d 705, 714 (11th Cir.1984). Similarly, statements in affidavits that are based, in part, upon information and belief, instead of only knowledge, do not raise genuine issues of fact. *Pace v. Capobianco,* 283 F.3d 1275, 1278-79 (11th Cir.2002).

Construing the evidence in favor of the Plaintiff as the nonmovant, the record shows the following. On March 30, 2009, Plaintiff was booked into the Jail. (Doc. 26 Williams Aff., ¶ 4.) When Plaintiff arrived at the Jail, he was HIV positive. (Doc. 27 Bradley Aff., ¶ 7.) At that time, Plaintiff's condition was being treated with two medications, Kaletra and Truvada, and Plaintiff brought both of those medications with him to the Jail. (Doc. 27 Bradley Aff., ¶ 7.) The instructions that accompanied those medications specified that Plaintiff was to receive Kaletra once in the morning and once in the evening. (Doc. 27 Bradley Aff., ¶ 8; Exh. A.) Those same instructions directed Plaintiff to take Truvada once a day. (Doc. 27 Bradley Aff., ¶ 9; Exh. A.) On April 28, 2009, Plaintiff submitted a Prisoner Medical Request Form on which he complained of an open sore on his left arm and a knot on the back of his head. (Id., ¶ 10; Exh. B.) That same day, Plaintiff was examined by Dr. Roland Brown ("Dr. Brown"), who provides medical services to inmates of the Jail. (Doc. 27 Bradley Aff., ¶ 11.) Following examination, Dr. Brown diagnosed Plaintiff as having an area of cellulites on his left forearm and an alopecia patch on his scalp. (Id. Aff., ¶ 12.) Dr. Brown treated those conditions with prescriptions for Keflex and Triamcinalone cream. (Id.) The following day, Plaintiff was provided with Triamcinalone cream and received his initial dose of Cephalexin, which is the generic name for Keflex. (Doc. 27 Bradley Aff., ¶ 14.) Plaintiff continued to receive Cephalexin until his prescription was completed on May 6, 2009. (Doc. 27 Bradley Aff., ¶ 14.)

4

On May 1, 2009, Plaintiff was examined by a physician who works for Albany Area Primary Health Care ("Primary Health Care"). (Doc. 27 Bradley Aff., ¶ 15.) During that visit, Plaintiff received prescriptions for Truvada, Kaletra, Doxycycline and Nizoral Cream. (Id.; Exh. D.) At the time those prescriptions were issued, Plaintiff had not completed his prior prescriptions for Truvada and Kaletra. (Id. at ¶ 16.) As such, on May 4, 2009, only the prescriptions for Doxycycline and Ketoconazole Cream (also known as Nizoral Cream) were filled. (Id.; Exh. E-F.) The Ketoconazole Cream was delivered to Plaintiff on May 6, 2009, and Plaintiff received Doxycycline from May 6, 2009, until the prescription was completed on May 18, 2009. (Id. at ¶¶ 17-18; Exh. V-2; V-3.)

On May 14, 2009, Plaintiff's prescriptions for Truvada and Kaletra were refilled. (Id. at ¶ 19; Exh. G; H.) Those same prescriptions were also refilled on June 17, 2009. (Id. at ¶ 20; Exh. I; J.) On July 6, 2009, Plaintiff submitted a Prisoner Medical Request Form on which he complained of cold and flu-like symptoms for the past six (6) days. (Id. at ¶ 21; Exh. K.) In particular, Plaintiff complained of sore throat, congestion and a constant cough. (Id. at ¶ 21; Exh. K.) As a result of those complaints, Plaintiff was examined by Dr. Brown on July 7, 2009. (Id. at ¶ 22.) Following examination, Plaintiff was diagnosed as having bronchitis and sinusitis and those conditions were treated with prescriptions for Medrol, Mintuss Dr syrup and Bactrim. (Id. at ¶ 22.) In addition, Dr. Brown instructed Plaintiff to return in 10 days, or sooner if necessary. (Id. at ¶ 22.)

On the same day that Dr. Brown issued prescriptions for Medrol, Mintuss Dr syrup and Bactrim, those prescriptions were filled. (Id. at ¶ 23; Exh. L-N.) Plaintiff received those medications from July 8, 2009, until all of those medications were finished on July 19, 2009. (Id. at ¶ 24; Exh. V-6.)

Pursuant to Dr. Brown's instruction, a Prisoner Medical Request Form was submitted in regard to Plaintiff on July 17, 2009, and Plaintiff was seen by Dr. Brown on that same day. (Id. at ¶

25; Exh. O.) During his meeting with Dr. Brown on July 17, Plaintiff reported that he was doing better and an examination that was performed during that visit showed that Plaintiff's vital signs were normal. (Id. at ¶ 26.) On July 21, 2009, Plaintiff's prescriptions for Truvada and Kaletra were refilled. (Id. at ¶ 27; Exh. P-Q.) On August 7, 2009, Plaintiff was again examined by a doctor from Primary Health Care and, following examination, Plaintiff's prescriptions for Truvada, Kaletra and Nizoral cream were continued. (Id. at ¶ 28; Exh. R.)

On August 18, 2009, Plaintiff's prescriptions for Truvada and Kaletra were again refilled. (Id. at ¶ 29; Exh. S, T.) On November 6, 2009, Plaintiff was again seen by a physician from Primary Health Care and, following the visit, that physician issued a prescription for an ointment to treat a rash and renewed Plaintiff's prescription for Truvada and Kaletra. (Id. at ¶ 30; Exh. U.)

According to the calculations made by Defendants, as of December 31, 2009, Plaintiff had been incarcerated in the Jail for 277 days. Plaintiff's prescription for Kaletra provided that Plaintiff was to take that medication once in the morning and once in the evening. (Id. at ¶ 31.) Plaintiff's prescription for Truvada directed Plaintiff to take that medication once a day. (Id. at ¶ 32.) During the 277 days that Plaintiff was incarcerated in the Jail, he received Kaletra in the morning on 266 days, and he received Kaletra in the evening on 255 days. (Id. at ¶ 31.) During that same 277 day period, Plaintiff received Truvada 258 days. (Id. at ¶ 32.)

Defendants also submit the affidavit of Dr. Roland Brown, who reviewed Plaintiff's medical records and rendered the opinion that there was no evidence in the records to show that Plaintiff experienced any adverse consequences as a result of not receiving all of his medication. (Doc. 31)

In Plaintiff's first response to the motion, (Doc. 30), he states that he somewhat agrees that Defendant Williams did not know what was going on with his medication. Plaintiff stated that after he filed this lawsuit, Defendant Williams called him to her office so that he could explain this issue

6

to her. Plaintiff states after that conversation, "things started changing for the better." Plaintiff also states that Defendant Haywood apologized to him and explained that he had misunderstood the instructions on Plaintiff's medication.

Plaintiff also takes issue with the dosage he was supposed to receive. Instead of taking Kaletra once in the morning and once at night, he is supposed to take two pills in the morning and two pills at night, in combination with one Truvada pill in the morning. Plaintiff additionally objects to the affidavit of Dr. Brown. Plaintiff further states that he was denied the correct dosage on the following dates in 2009: April 15; April 29; May 1; May 5; May 12; May 13; May 19; May 21; May 30; August 21; September 11; September 18; and September 26. (Doc. 33).[3]

*Qualified Immunity*

Defendants assert that they are entitled to qualified immunity. The doctrine of qualified immunity provides that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Townsend v. Jefferson County,* 601 F.3d 1152 (11th Cir. 2010). "If the official was acting within the scope of his discretionary authority ... the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity." *Skop v. City of Atlanta,* 485 F.3d 1130, 1136-37 (11th Cir.2007). To overcome qualified immunity, the plaintiff must show both that: (1) the defendant violated a constitutional right, and (2) this right was clearly established. *Holloman ex rel. Holloman v. Harland,* 370 F.3d 1252, 1264 (11th Cir.2004). The court is permitted to exercise its discretion in determining which of

---

[3]Plaintiff entitled this document as a counterclaim for summary judgment. To the extent the document could be considered a motion, such should be **DENIED**, as the undersigned is recommending that Defendants be granted summary judgment for the reasons stated herein.

the two prongs of this qualified immunity test is considered first. *Pearson v. Callahan,* --- U.S. ----, 129 S.Ct. 808, 818 (2009).

According to the Supreme Court, a government official is entitled to qualified immunity unless he has received "fair warning" that his conduct deprived the plaintiff of a constitutional right. *Hope v. Pelzer*, 536 U.S. 730 (2002). "General statements of the law contained within the Constitution, statute or case law may sometimes provide 'fair warning' of unlawful conduct." *Willingham v. Loughnan*, 321 F.3d 1299, 1301 (11th Cir. 2003). However, the Eleventh Circuit has determined that, "[t]he more general the statement of law is that puts the official on notice, the more egregious the violation must be before we will find that the official is not entitled to qualified immunity." *Geobert v. Lee County*, 510 F.3d 1312, 1330 (2007). In addition, that court noted:

> The Supreme Court's decision in *Estelle* established that 'deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment.' As for unnecessary delays in treatment constituting deliberate indifference, we have held in *Lancaster v. Monroe County, Ala.,* that 'an official acts with deliberate indifference when he intentionally delays providing an inmate with access to medical treatment, knowing that the inmate has a life-threatening condition or an urgent medical condition that would be exacerbated by delay.' However, 'this general statement of law ordinarily does not preclude qualified immunity in cases involving a delay in medical treatment. . . . The cases are highly fact-specific and involve an array of circumstances pertinent to just what kind of notice is imputed to a government official and to the constitutional adequacy of' the official's acts and omissions.

*Id.*, (internal citations omitted.)

It is well established that prison personnel may not subject inmates[4] to "acts or omissions

---

[4] Although Plaintiff is a pretrial detainee at the jail, the Eleventh Circuit Court of Appeals has held that "in regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the [E]ighth [A]mendment for convicted persons." *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir.1985).

sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97 (1976). However, "[m]ere incidents of negligence or malpractice do not rise to the level of constitutional violations." Acts or omissions must involve the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25 (1993). In the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. "It is......true that when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." *McElligott v. Foley*, 182 F.3d 1248, 1256-1257 (11th Cir. 1999).

The medical care provided to an inmate must be reasonable. *Patterson v. Riddle*, 407 F. Supp. 1035 (E.D. Va. 1976). However, "it is not required that the medical care provided to the inmate be perfect, the best obtainable, or even very good." *Estelle*, 429 U.S. at 106.

The Eleventh Circuit has noted that, "where a prisoner has received medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law." *Murphy v. Turpin*, 159 Fed. Appx. 945 at fn. 4, (11th Cir. 2005), citing *Hamm*, 774 F.2d at 1575.

In *Estelle v. Gamble*, *supra*, the Supreme Court cautioned that not every allegation of inadequate medical treatment states a constitutional violation. *Estelle* at 105. Mere negligence in diagnosing or treating a medical condition is an insufficient basis for grounding liability on a claim of medical mistreatment under the Eighth Amendment. *Id.* at 106 (stating "[m]edical malpractice

9

does not become a constitutional violation merely because the victim is a prisoner"). A section 1983 claim, therefore, "does not lie if a prisoner's complaint is directed at the wisdom or quality of the medical treatment he received in prison, even if that treatment is so negligent as to amount to medical malpractice." *Brinton v. Gaffney*, 554 F.Supp. 388, 389 (E.D.Pa.1983).

A delay in providing medical treatment can constitute deliberate indifference. *Estelle,* 429 U.S. at 104-05, 97 S.Ct. at 291. However, "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir.1994), *overruled in part by Hope v. Pelzer*, 536 U.S. 730, 739 n. 9, 122 S.Ct. 2508, 2515 n. 9, 153 L.Ed.2d 666 (2002).

Defendants point to a factually similar case, *Williams v. Arnold*, 207 Fed. Appx. 980 (11th Cir. 2006), as support for their entitlement to qualified immunity. In *Williams*, which was concerned with the administration of medication to an inmate of the Wilcox County Jail in Alabama, the Eleventh Circuit concluded that no constitutional violation occurred when an inmate received "his medication more [than] 92 percent of the time that he was incarcerated in the Wilcox County jail." Similarly, in this case, between his incarceration in the Jail on March 30, 2009, and December 31, 2009, Plaintiff received his medication more than 92 percent of the time. (Doc. 27 Bradley Aff., ¶¶ 31-32.) As such, Defendants submit that the holding in *Williams* demonstrates that they did not violate clearly established law and, for that reason, they are entitled to qualified immunity and a grant of summary judgment.

The undersigned finds that all four Defendants are entitled to qualified immunity. Plaintiff had a serious medical need, HIV, for which he was being treated. Defendants and other staff at the Jail did not always provide Plaintiff with his medication as prescribed. Even under Plaintiff's

recitation of the facts (Docs. 17 and 33), Plaintiff never went longer than two day at a time with the improper or missed dosage. There is no substantial evidence that Defendants ordered, condoned, or willfully ignored the delays in receiving medication. *See Taylor v. Adams,* 221 F.3d 1254, 1257 (11th Cir.2000). "At best, the delays suggest that the jail's methods of procuring medicine from the local pharmacy need adjusting. Even so, this would be negligence, not the deliberate indifference forbidden by the Eighth Amendment." *Id.* at 1257-58; *Williams* at 985.

*Respondeat Superior*

Defendants Powell, Richards, and Williams further assert that they are entitled to summary judgment under the theory of *respondeat superior*.

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir.2003). Supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of the supervisor and the alleged violation. This causal connection may be established when a supervisor's "custom or policy ... result[s] in deliberate indifference to constitutional rights." *Id.* "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." *Id.* The causal connection can also be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," or when facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir.2003) (internal citations omitted). "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely

11

rigorous." *Id.*

Plaintiff states that the named Defendants run and operate the Jail, and "should therefore take total responsibility for their employed staff's negligence." Plaintiff states these Defendants are responsible for his medical care and gave the medical clearance for his prescribed medication to be admitted into the Jail. Plaintiff alleges that, "[o]n numerous pill calls my dosage was inadequate in which I explained this to certain officers who administered pill call at the Thomas County Jail (Lane, Richardson, Jackson, Cason)." (Doc. 33, ¶ 4.)

By Plaintiff's own statements, these three Defendants were not directly involved in the alleged failure to adequately provide Plaintiff with his medications. Instead, Plaintiff is seeking to hold them responsible for the alleged actions or inactions of other staff members who are not party to this lawsuit. Plaintiff admits that Defendant Williams was probably not aware of the problem, and he states the situation improved once she did become aware of the issue with his medication. Consequently, Defendants Williams, Powell, and Richards are entitled to summary judgment under this defense as well.

It is therefore the RECOMMENDATION of the undersigned that Defendants' motion for summary judgment be **GRANTED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable Hugh Lawson, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy.

**SO RECOMMENDED**, this 19th day of July, 2010.

        S//Thomas Q. Langstaff
        THOMAS Q. LANGSTAFF
        UNITED STATES MAGISTRATE JUDGE

msd